## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| FELITA MCGEE, as Independent Administrator of the Estate of MICHAEL CARTER, SR., *deceased* and as next-of-kin <br><br> Plaintiff <br><br> vs. <br><br> MACON COUNTY SHERIFF'S DEPARTMENT; DECATUR MEMORIAL HOSPITAL; DMH CORPORATE HEALTH SERVICES; ROBERT BRACO, MD; JO BATES, LPN; RANDELL WEST; LARRY PARSANO; TERRY COLLINS; MICHAEL PATTON; and JOSHUA PAGE <br><br> Defendants. | Case No.  2:16-cv-02221 |

## AMENDED COMPLAINT AT LAW

Plaintiff, FELITA MCGEE, as Independent Administrator of the ESTATE OF MICHAEL CARTER, SR. *deceased*, and as next-of-kin, by her attorneys, LAW OFFICES OF RAHSAAN A. GORDON, and in her action against Defendants MACON COUNTY SHERIFF'S DEPARTMENT; DECATUR MEMORIAL HOSPITAL; DMH CORPORATE HEALTH SERVICES; ROBERT BRACO, MD; JO BATES, LPN; RANDELL WEST; LARRY PARSANO; TERRY COLLINS; MICHAEL PATTON; and JOSHUA PAGE (sometimes referred to in the collective as 'DEFENDANTS"), and hereby alleges the following:

## PRELIMINARY STATEMENT

1.      Michael Carter, Sr., a 35 year-old African-American male, and United States citizen, was taken into custody of the Macon County Sheriff's Department at its jail in Decatur, Illinois on July 13, 2015.  His prescribed diabetes medication was confiscated at booking.  Mr.

Carter became ill after being deprived of his medication, and was then deprived of emergency medical care over several days for an obviously serious diabetic condition, and denied emergency ambulatory transport to the hospital. On July 18, 2015, and just five days after Mr. Carter's arrest, he died alone in a jail cell due to diabetic ketoacidosis.

## PARTIES

2.     Plaintiff, Felita McGee, is a resident of the City of Decatur, State of Illinois.

3.     Decedent, Michael Carter, Sr., was U.S. citizen and a resident of the City of Decatur, County of Macon, State of Illinois.

4.     Defendant Decatur Memorial Hospital is an Illinois corporation with offices in the City of Decatur, Illinois.

5.     Defendant Macon County Sheriff's Department is a governmental entity with offices in the City of Decatur, Illinois.

6.     Defendant DMH Corporate Services is an Illinois corporation with offices in the City of Decatur, Illinois.

7.     Defendant Robert Braco, MD, was a resident of Illinois at the time of the events described herein, was employed, retained, and/or contracted by Defendant Macon County Sheriff's Department, Decatur Memorial Hospital, and/or DMH Corporate Services as a medical doctor to provide medical care to inmates at Macon County Jail. He is sued in his individual and official capacities, and as an agent of Macon County Sheriff's Department, Decatur Memorial Hospital, and/or DMH Corporate Services.

8.     Defendant, Jo Bates, LPN, was a resident of the State of Illinois at the time of the events described herein, and was employed by Macon County Sheriff's Department, Decatur Memorial Hospital, and/or DMH Corporate Services as a nurse to provide medical and nursing

2

treatment to inmates at the Macon County Sheriff's jail facility. She is sued in her individual capacity and official capacities, and as an agent of Macon County Sheriff's Department, Decatur Memorial Hospital, and/or DMH Corporate Services.

10.    Corporal Randell West was a resident of the State of Illinois at the time of the events described herein, and was employed by Macon County Sheriff's Department. He is sued in his official capacity, individual capacity, and as an agent and/or employee of Macon County Sheriff's Department.

11.    Larry Parsano was a resident of the State of Illinois at the time of the events described herein, and was employed by Macon County Sheriff's Department. He is sued in his official capacity, individual capacity, and as an agent and/or employee of Macon County Sheriff's Department.

12.    Terry Collins was a resident of the State of Illinois at the time of the events described herein, and was employed by Macon County Sheriff's Department. He is sued in his official capacity, individual capacity, and as an agent and/or employee of Macon County Sheriff's Department.

13.    Michael Patton was a resident of the State of Illinois at the time of the events described herein, and was employed by Macon County Sheriff's Department. He is sued in his official capacity, individual capacity, and as an agent and/or employee of Macon County Sheriff's Department.

14.    Joshua Page was a resident of the State of Illinois at the time of the events described herein, and was employed by Macon County Sheriff's Department. He is sued in his official capacity, individual capacity, and as an agent and/or employee of Macon County Sheriff's Department.

15.     At all relevant times, all defendants acted under color of state law, and within the scope of their employment and/or agency.

## JURISDICTION & VENUE

16.     This Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1983 because the matters in controversy arise under the Constitution and laws of the United States.

17.     This Court has supplemental jurisdiction of the Illinois state law claims pursuant to 28 U.S.C. § 1367.

18.     Venue is proper in this Court under 28. U.S.C. § 1391(b) because a substantial part of the events that give rise to plaintiff's claims took place within the Central District of Illinois.

## STATEMENT OF CLAIM

19.     At all times relevant to the matters stated in this Complaint, there was in force and effect the Constitution of the United States which provided in relevant part as follows:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
>
> -   Constitution of the United States, Amendment XIV

20.     At all times relevant to the matters stated in this Complaint, there was in force and effect a federal law known as the Civil Rights Act of 1871 which provided in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  42 U.S.C. § 1983.

4

21.     At all times relevant to the matters stated in this Complaint, there was in force and effect certain statutes in the State of Illinois which provided in relevant part as follows:

Sheriff custodian of courthouse and jail.

He or she shall have the custody and care of the courthouse and jail of his or her county, except as is otherwise provided. 55 ILCS 5/3-6017.

* * *

The Sheriff of each county in this State shall be the warden of the jail of the county, and have the custody of all prisoners in the jail, except when otherwise provided in the "County Department of Corrections Act". The Sheriff may appoint a superintendent of the jail, and remove him at his pleasure, for whose conduct and training, he shall be responsible. The Sheriff shall also be responsible for the hiring and training of all personnel necessary to operate and maintain the jail. 730 ILCS 125/2 and 3.

* * *

The Warden of the jail shall furnish necessary bedding, clothing, fuel and medical aid for all prisoners under his charge, and keep an accurate account of the same. 730 ILCS 125/17.

22.     Beginning on or about July 13, 2015, Michael Carter, Sr. was arrested and placed into the custody of defendant Macon County Sheriff's Department at its jail in Decatur, Illinois. During Mr. Carter's initial booking interview, he informed defendants and jail staff that he was diabetic and required medication.

23.     At intake, Mr. Carter possessed prescription oral medication to manage his diabetes.  Mr. Carter asked various defendants, at various times, to administer his medication as prescribed.

24.     That in spite of notice of Mr. Carter's diabetic condition, Mr. Carter's prescribed medication was confiscated, and in furtherance of the policies and customs of Macon County Sheriff's Department and Decatur Memorial Hospital.

5

25.     That for all times relevant, Macon County Sheriff's Department and Decatur Memorial Hospital maintained a contractual partnership to provide healthcare and healthcare management services to individuals detained at the Macon County Jail.

26.     Shortly after being assigned a jail cell, Mr. Carter began to complain to jail staff and defendants that he was ill, need his medication, and wanted to see a doctor. His pleas went ignored.

27.     Mr. Carter's health deteriorated rapidly over the next two days. During this time, complained to his fiancée on the phone about extreme abdominal pain, vomiting, weakness, fatigue, and shortness of breath. She knew he was in serious medical danger based on his obvious difficulty breathing and disorientation.

28.     That on July 15, 2015, Mr. Carter was transferred to the jail's medical unit for observation. He still was not given medication to treat his diabetic condition. He was then transferred back to a general population jail cell, where he was not monitored for his medical distress, and received no treatment for his worsening diabetic condition.

29.     That on July 17, 2015, Mr. Carter told his fiancée he had been returned to a general population jail cell, in spite of his obvious difficulty in breathing. Mr. Carter asked defendants for help multiple times, but no one assisted.

30.     That on July 17, 2015, Mr. Carter's mother called the Macon County Sheriff's Department's jail division and spoke with defendant Jo Bates, a nurse working at the jail. Mr. Carter's mother informed defendant Bates that she too was a nurse, and that her son was diabetic and was having respiratory distress, shortness of breath, vomiting, and was clearly disoriented.

31.     Mr. Carter's mother warned defendant Bates that his symptoms sounded like diabetes ketoacidosis, an emergency life-threatening medical situation. She asked defendant

6

Bates to immediately transfer him to a nearby hospital so he could receive adequate medical attention and an IV insulin drip. Defendant Bates refused, telling Mr. Carter's mother that defendant Doctor Braco would check on him the following day. Defendant Bates further told Mr. Carter's mother that he was simply having "anxiety" about being incarcerated.

32.     That sometime later on July 17, 2015, Mr. Carter was again returned to the jail's medical unit. Later that evening, he was briefly seen by defendant Dr. Braco, but not treated. No glucose level tests were performed, and defendant Dr. Braco continued to refuse to give Mr. Carter diabetic medication to treat his deteriorating condition. And in spite of his obvious and serious medical distress, Dr. Braco ordered that Mr. Carter be returned to a general population jail cell the following morning.

33.     That on following morning of July 18, 2015, Mr. Carter was in obvious medical distress and unable to stand on his own, and was unable to speak clearly. He was lethargic and completely disoriented. He had not eaten his dinner meal from the evening before. His glucose level was greater than 500 milligrams per deciliter. He still had not been given insulin or his prescribed diabetes medication.

34.     In spite of Mr. Carter's obvious serious medical distress on July 18, 2015, and severe risk of great injury and/or death, he was forcibly removed from his medical his cell by defendants West, Parsano, Patton, Collins, and Page, all employed by defendant Macon County Sheriff's Department. Defendant West stepped on Mr. Carter's hand and kicked him numerous times, before picking him up around his neck, and putting him into a wheelchair. He was wheeled to a segregated housing area of the jail known as "deadlock", an area reserved for uncooperative inmates. He had been considered uncooperative simply because he couldn't stand

on his own and was non-responsive. The segregated cell he was taken to contained no video surveillance for medical monitoring.

35.    That throughout the morning of July 18, 2015, various jail staff and the defendants observed Mr. Carter in his jail cell in obvious medical distress and still refused to call an ambulance. As hours passed by, an officer at the jail finally demanded defendant Bates summon an ambulance so he could be transported to the hospital. Defendant Bates refused, and instead telephoned defendant Dr. Braco, who was away from the jail facility. In spite of various jail staff and defendants witnessing Mr. Carter's obvious medical distress, no one called an ambulance.

36.    That even after defendant Bates told defendant Dr. Braco that Mr. Carter was in obvious serious medical distress, Dr. Braco refused to allow Mr. Carter's emergency transfer to the hospital, saying he would evaluate him on his regular rounds later that day. Only after pressure from officer at the jail, did defendants Dr. Braco and Bates finally relent and authorize Mr. Carter's transfer to a hospital, but only by patrol car. None of the patrol cars were equipped to handle a medical emergency.

37.    That although it was common knowledge that failure to treat diabetes could result in diabetic ketoacidosis and death, defendant Dr. Braco ordered that Mr. Carter could only be transferred to the hospital using a regular patrol car because he didn't want to incur the $1000 bill for an ambulance. Defendant Bates agreed.

38.    Nearly three hours after being forcibly removed from the medical unit, and denied ambulatory transport to the hospital, Mr. Carter died, alone, in a segregated jail cell due to diabetes ketoacidosis.

8

39.     Defendants, by their acts or omissions as set forth above, showed deliberate indifference to a serious and known medical condition of the decedent.

40.     As a consequence of one or more of the foregoing acts or omissions of the various defendants, as set forth above, failed to provide Mr. Carter with adequate medical care and demonstrated a deliberate indifference to his medical condition. As the proximate result of all the above, Mr. Carter suffered excruciated pain and suffering, and ultimately death.

41.     The Court has authority pursuant to 42 US.C. § 1983 to award appropriate actual, consequential, compensatory, and punitive damages, and has authority under 42 U.S.C. § 1988 to award attorneys fees and costs to successful civil rights plaintiffs.

## CAUSES OF ACTION

### COUNT I:     DENIAL OF MEDICAL CARE
**Deprivation of Fourteenth Amendment Rights and 42 U.S.C. §1983**
**All Defendants**

42.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

43.     Defendants, each of them, had a duty to take reasonable measures in response to the obvious serious medical need and risk posed by Mr. Carter's condition

44.     Defendants, each of them, were aware that Mr. Carter condition began to deteriorate, and yet took no action to provide or request medical care for Mr. Cater, disregarding the obvious risk to his health.

45.     That the conduct and actions of defendants, acting under color of law, in failing to request or obtain medical attention for Michael Carter, Sr., was unreasonable, was done intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for his serious medical needs, and was designed to and did cause specific and serious

physical and emotional pain and suffering in violation of his substantive due process rights as guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. The defendants knew Mr. Carter faced a substantial risk of harm, and disregarded that risk by failing to take reasonable measure to abate it. As a direct and proximate result of the foregoing, Mr. Carter was subjected to great physical and emotional pain and suffering, and ultimately death.

Wherefore, Plaintiff FELITA MCGEE prays that that judgment is entered against Defendants for an amount in excess of $50,000,000 for actual damages, compensatory damages, punitive damages, attorney's fees, costs, and all other just and proper relief.

## COUNT II:  *MONELL* CLAIM
### Macon County Sheriff's Department
### 42 U.S.C. 1983

46.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

47.     Defendant Macon County Sheriff's Department directly caused the constitutional violations suffered by decedent, and is liable for the damages suffered as a result of the conduct of the defendant employees and/or agents of defendant Macon County Sheriff's Department. The conduct of the defendant officers was a direct consequence of polices and practices of Macon County Sheriff's Department.

48.     At all times relevant to this Complaint, Macon County Sheriff's Department, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages of encouraging jail staff to ignore obvious signs of medical distress involving individuals detained in its custody.

49.     At all times relevant to this Complaint, defendant Macon County Sheriff's Department, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages discouraging staff, employees, contractors, and/or agents from calling necessary emergency medical rescue personnel to the jail in order to save costs, even when an inmate displays obvious signs of life-threatening medical distress.

50.     At all times relevant to this Complaint, defendant Macon County Sheriff's Department, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages which refused to properly train, monitor, supervise or ensure staff and/or agents or utilize a proper protocol concerning summoning emergency medical personnel to the jail to assist an inmate in obvious serious medical distress.

51.     At all times relevant to this Complaint, defendant Macon County Sheriff's Department, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages which, in an effort to reduce costs, discouraged jail staff and defendants from summoning emergency medical rescue personnel, even during times of obvious signs of serious medical distress.  This fails to discourage constitutional violations.

52.     At all times relevant to this Complaint, defendant Macon County Sheriff's Department, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages requiring confiscation of bona fide prescription medication upon a person's booking in jail, without regard to whether or not its life-saving medication.

53.     As a result of the above described policies and customs, jail staff and the defendants believed that their actions and/or inaction would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

54.     The wrongful policies, practices, customs, and/or usages complained of herein demonstrated a deliberate indifference on the part of defendant Macon County Sheriff's Department to the constitutional rights of persons needing medical care in its jail facility, and were the direct and proximate cause of the violations of Mr. Carter's rights alleged herein.

Wherefore, Plaintiff FELITA MCGEE prays that that judgment is entered against Defendants for an amount in excess of $50,000,000 for actual damages, compensatory damages, punitive damages, attorney's fees, costs, and all other just and proper relief.

### COUNT III:   *MONELL* CLAIM
### Decatur Memorial Hospital 42 U.S.C. 1983

55.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

56.     Defendant Decatur Memorial Hospital directly caused the constitutional violations suffered by decedent, and is liable for the damages suffered as a result of the conduct of the defendant employees and/or agents of defendant Decatur Memorial Hospital.  The conduct of the defendant officers was a direct consequence of policies and practices of Decatur Memorial Hospital.

57.     At all times relevant to this Complaint Decatur Memorial Hospital, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages of encouraging jail staff to ignore obvious signs of medical distress involving individuals detained in its custody.

58.     At all times relevant to this Complaint, defendant Decatur Memorial Hospital, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages discouraging staff, employees, contractors, and/or agents from calling

necessary emergency medical rescue personnel to the jail in order to save costs, even when an inmate displays obvious signs of life-threatening medical distress.

59.     At all times relevant to this Complaint, defendant Decatur Memorial Hospital, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages which refused to properly train, monitor, supervise or ensure staff and/or agents or utilize a proper protocol concerning summoning emergency medical personnel to the jail to assist an inmate in obvious serious medical distress.

60.     At all times relevant to this Complaint, Decatur Memorial Hospital, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages which, in an effort to reduce costs, discouraged its employees and/or agents and defendants from summoning emergency medical rescue personnel, even during times of obvious signs of serious medical distress.  This fails to discourage constitutional violations.

61.     At all times relevant to this Complaint, defendant Decatur Memorial Hospital, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages requiring confiscation of bona fide prescription medication upon a person's booking in jail, without regard to whether or not its life-saving medication.

62.     As a result of the above described policies and customs, defendant's employees and/or agents jail believed that their actions and/or inaction would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

63.     The wrongful policies, practices, customs, and/or usages complained of herein demonstrated a deliberate indifference on the part of Decatur Memorial Hospital to the

13

constitutional rights of persons needing medical care in its jail facility, and were the direct and proximate cause of the violations of Mr. Carter's rights alleged herein.

Wherefore, Plaintiff FELITA MCGEE prays that that judgment is entered against Defendants for an amount in excess of $50,000,000 for actual damages, compensatory damages, punitive damages, attorney's fees, costs, and all other just and proper relief.

## COUNT IV:    INSTITUTIONAL NEGLIGENCE
### (Illinois Claim)
### Macon County Sheriff's Department

64.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

65.    At all times relevant, Macon County Sheriff's Department and Decatur Memorial Hospital were the two institutions primary institutions responsible for the medical care of pre-trial detainees housed at the Macon County Jail.   Each defendant institution had an independent duty to supervise and ensure that medical care was provided safely by their employees and/or agents at the jail.

66.    At all times relevant to this Complaint, Macon County Sheriff's Department, acting through its employees and/or agents and through the other defendants had policies, practices, customs, and usages encouraging jail staff and medical to ignore obvious signs of medical distress involving individuals detained in jail custody.

67.    At all times relevant to this Complaint, defendant Macon County Sheriff's Department, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages discouraging staff, employees, contractors, and/or agents from calling necessary emergency medical rescue personnel to the jail in order to save costs, even when an inmate displays obvious signs of life-threatening medical distress.

14

68.     At all times relevant to this Complaint, defendant Macon County Sheriff's Department, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages which refused to properly train, monitor, supervise or ensure staff and/or agents or utilize a proper protocol concerning summoning emergency medical personnel to the jail to assist an inmate in obvious serious medical distress.

69.     At all times relevant to this Complaint, defendant Macon County Sheriff's Department, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages which, in an effort to reduce costs, discouraged jail staff and defendants to summon emergency medical rescue personnel, even during times of obvious signs of serious medical distress.

70.     At all times relevant to this Complaint, defendant Macon County Sheriff's Department, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages requiring confiscation of bona fide prescription medication upon a person's booking in jail, without regard to whether or not its life-saving medication.

71.     As a result of the above described policies and customs, jail staff and the defendants believed that their actions and/or inaction would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

72.     The wrongful policies, practices, customs, and/or usages complained of herein on the part of defendant Macon County Sheriff's Department to the constitutional rights of persons needing medical care in its jail facility created and unreasonably safe environment for inmates with health concerns, and were the direct and proximate cause of Mr. Carter's death.

15

Wherefore, Plaintiff FELITA MCGEE prays that that judgment is entered against Defendants for an amount in excess of $50,000,000 for actual damages, compensatory damages, punitive damages, attorney's fees, costs, and all other just and proper relief.

## COUNT V:    INSTITUTIONAL NEGLIGENCE
### (Illinois Claim)
### Decatur Memorial Hospital

73.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

74.     At all times relevant, Macon County Sheriff's Department and Decatur Memorial Hospital were the two primary institutions responsible for the medical care of pre-trial detainees housed at the Macon County Jail.

75.     Each defendant institution had an independent duty to supervise and ensure that medical care was provided safely by their employees and/or agents at the jail.

76.     At all times relevant to this Complaint, Decatur Memorial Hospital, acting through its employees and/or agents and through the other defendants had policies, practices, customs, and usages encouraging jail staff and medical to ignore obvious signs of medical distress involving individuals detained in jail custody.

77.     At all times relevant to this Complaint, defendant Decatur Memorial Hospital, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages discouraging staff, employees, contractors, and/or agents from calling necessary emergency medical rescue personnel to the jail in order to save costs, even when an inmate displays obvious signs of life-threatening medical distress.

78.     At all times relevant to this Complaint, defendant Decatur Memorial Hospital, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages which refused to properly train, monitor, supervise or ensure staff and/or

agents or utilize a proper protocol concerning summoning emergency medical personnel to the jail to assist an inmate in obvious serious medical distress.

79.     At all times relevant to this Complaint, defendant Decatur Memorial Hospital, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages which, in an effort to reduce costs, discouraged jail staff and defendants to summon emergency medical rescue personnel, even during times of obvious signs of serious medical distress.

80.     At all times relevant to this Complaint, defendant Decatur Memorial Hospital, acting through its employees and/or agents and through the defendants had policies, practices, customs, and usages requiring confiscation of bona fide prescription medication upon a person's booking in jail, without regard to whether or not its life-saving medication.

81.     As a result of the above described policies and customs jail staff and the defendants believed that their actions and/or inaction would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

82.     The wrongful policies, practices, customs, and/or usages complained of herein on the part of defendant Decatur Memorial Hospital to the constitutional rights of persons needing medical care in its jail facility created and unreasonably safe environment for inmates with health concerns, and were the direct and proximate cause of the violations of Mr. Carter's death.

Wherefore, Plaintiff FELITA MCGEE prays that that judgment is entered against Defendants for an amount in excess of $50,000,000 for actual damages, compensatory damages, punitive damages, attorney's fees, costs, and all other just and proper relief.

## COUNT VI:   MEDICAL MALPRACTICE/WRONGFUL DEATH
### (Illinois Claim)
**Decatur Memorial Hospital, DMH Corporate Health Services, Dr. Braco, Nurse Bates**

83.      Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

84.      At all times relevant Defendant Decatur Memorial Hospital (DMH) was a hospital located in the City of Decatur and the County of Macon in the State of Illinois.

85.      At all times relevant Defendants DMH, DMH Corporate Services, Macon County, Defendant Braco, and Macon County Sheriff's Department maintained a contractual relationship for the the provision of medical services to inmates housed at its jail, and via authorized their agents and/or employees, including but not limited to Defendants Braco and Bates.

86.      Defendants, each of them, either individually and/or via their authorized agents and/or employees, breached the appropriate standards of care and were negligent in one or more of the following respects.

a.      Improperly confiscated and withheld decedent's prescribed diabetic medication, without providing a proper replacement;

b.      Failed to properly monitor decedent's diabetic condition.

c.      Failed to take appropriate medical action once decedent's diabetic condition didn't improve;

c.      Failed to adequately and properly treat decedent's diabetic condition, when Defendants knew, or in the exercise of ordinary care should have known, said adequate and proper treatment was necessary to prevent serious injury and death;

d.    Failed to timely transport decedent to a hospital, wherein he could receive life-saving treatment for his diabetic condition.

87.    As a proximate result of one or more of the foregoing negligent acts or omissions, Mr. Carter, *deceased*, sustained injuries which resulted in his death on July 18, 2015.

88.    Mr. Carter left surviving him a son who has suffered pecuniary loss as a result of his death.

89.    Felita McGee, is the duly appointed Independent Administrator of Michael Carter, Sr., *deceased*, and as such brings this cause of action both individually and on behalf of the Estate of the decedent pursuant to Chapter 70, Sections 1 and 2 of the Illinois Revised Statutes commonly known as the Wrongful Death Act of the State of Illinois.

Wherefore, Plaintiff FELITA MCGEE prays that that judgment is entered against Defendants for an amount in excess of $50,000,000 for actual damages, compensatory damages, punitive damages, attorney's fees, costs, and all other just and proper relief.

## COUNT VII:   MEDICAL MALPRACTICE/SURVIVAL ACTION
### (Illinois claim)
**Decatur Memorial Hospital, DMH Corporate Health Services, Dr. Braco, Nurse Bates**

90.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

91.    As a proximate result of one or more of the foregoing negligent acts or omissions, Mr. Carter, *deceased*, died on July 18, 2015, and had conscious pain and suffering before his death, and had he survived, he would have been entitled to bring an action for damages, said action having survived him.

92.    Plaintiff, Felita McGee, is the duly appointed Independent Administrator of the Estate of MICHAEL CARTER, SR., Deceased, and brings this Survival Action on behalf of the

Estate pursuant to Illinois Revised Statutes, Chapter 110-1/2, Section 27-6, and Chapter 37, Section 439.8.

Wherefore, Plaintiff FELITA MCGEE prays that that judgment is entered against Defendants for an amount in excess of $50,000,000 for actual damages, compensatory damages, punitive damages, attorney's fees, costs, and all other just and proper relief.

## COUNT VIII:   NEGLIGENT SUPERVISION, RETENTION AND TRAINING
### (Illinois claim)
### Macon County Sheriff's Department

93.   Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set fort herein.

94.   Defendant Macon County Sheriff's Department negligently trained, retained, and supervised its staff, and others, including, defendants Braco, Bates, West, Parsano, Collins, Patton, and Page.  The acts and conduct of the aforementioned defendants were the direct and proximate cause of injury.

Wherefore, Plaintiff FELITA MCGEE prays that that judgment is entered against Defendants for an amount in excess of $50,000,000 for actual damages, compensatory damages, punitive damages, attorney's fees, costs, and all other just and proper relief.

## COUNT IX:   BATTERY
### (Illinois Claim)
### Randell West and Macon County Sheriff's Department (Respondeat Superior)

95.   Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

96.   By the conduct and actions described above, defendant West inflicted the tort of batter upon the decedent.  The acts and conduct of defendant West was the direct and proximate cause of injury and damage.

20

97.     Defendant West's acts constituted an assault upon decedent in that West intentionally attempted to injure plaintiff or commit a battery upon him, and further that West's actions represented a grievous affront to decedent.

98.     Defendant West's acts constituted a battery upon the decedent in that the above described bodily contact was intentional, unauthorized, and grossly offensive in nature.

99.     The actions of defendant West were intentional, reckless, and unwarranted, and without any just cause or provocation, and defendant West knew, or should have known, that his actions were without the consent of the decedent.

100.    At all times, defendant West acted in the course and scope of his employment with defendant Macon County Sheriff's Department.

101.    As a direct and proximate result of the foregoing, decedent was subjected to great physical and emotional pain and humiliation, was deprived of his liberty and was otherwise damaged and injured.

Wherefore, Plaintiff FELITA MCGEE prays that that judgment is entered against Defendants for actual damages, compensatory damages, punitive damages, attorney's fees, costs, and all other just and proper relief.

LAW OFFICES OF RAHSAAN A. GORDON

By_____

By One of Plaintiff's Attorneys

Rahsaan A. Gordon
**LAW OFFICES OF RAHSAAN A. GORDON**
333 West Wacker Drive, Suite 500
Chicago, Illinois 60606
312-422-9500
rg@attorneygordon.com

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS

FELITA MCGEE, as Independent )
Administrator of the Estate of MICHAEL )
CARTER, SR., *deceased* and as next-of-kin )
                      )
       Plaintiff )
                      )
       vs. )
                      )     Case No.  2:16-cv-02221
                      )
MACON COUNTY SHERIFF'S )
DEPARTMENT; DECATUR MEMORIAL )
HOSPITAL; DMH CORPORATE )
HEALTH SERVICES; ROBERT )
BRACO, MD; JO BATES, LPN; )
RANDELL WEST; LARRY PARSANO; )
TERRY COLLINS; MICHAEL PATTON; )
and JOSHUA PAGE )
                      )
       Defendants. )

## ATTORNEY'S AFFIDAVIT

I, Rahsaan A. Gordon, being first duly sworn on oath, state:

1.  I am the attorney for the plaintiff herein.

2.  That I have consulted with a health professional who I reasonably believe is knowledgeable in the this action, has practiced for more than twenty years in the same area of health care that is at issue in this action, and is qualified by experience and has demonstrate competence in the subject of the case.

3.  That the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in this action that there is a reasonable and meritorious cause for the filing of this action.

4.        That I have concluded on the basis of the reviewing health professional's

review and consultation that there is a reasonable and meritorious cause

for filing this action.

SUBSCRIBED and SWORN to before me
this _25th_ day of June 2017

Notary Public

```
OFFICIAL SEAL
RICHARD A. YEE
Notary Public - State of Illinois
My Commission Expires 9/30/2020
```

Rahsaan A. Gordon
**LAW OFFICES OF RAHSAAN A. GORDON, P.C.**
333 West Wacker Drive, Suite 500
Chicago, Illinois 60606
312-422-9500
rg@attorneygordon.com

## CERTIFICATE OF MERIT

I, Henry George Fein, am a licensed practicing physician. I am Board Certified in Endocrinology/Diabetes/Metabolism. I have more than thirty-five years of experience in this field. I am qualified to address the standards of care rendered by medical professionals practicing in the area of endocrinology/diabetes.

I have reviewed various medical records generated while the decedent, Michael Carter, Sr., was in the custody of Macon County, and records from Decatur Memorial Hospital, St. Mary's Hospital, Macon County Postmortem Examination, Macon County Coroner's Inquest transcript, medical staff interviews, Macon County correctional officer interviews, Macon County Jail intake reports, and Plaintiff's Complaint. I am familiar with the issues involved in this case.

It is my opinion, based upon a reasonable degree of medical certainty, and upon my review of the aforementioned records, that Dr. Robert Braco failed to utilize the knowledge and exercise the skill of a reasonably qualified attending physician, and that he departed from the appropriate standard of care, and was negligent during the course of care and treatment rendered to decedent.

Specifically, Dr. Braco was negligent insofar as he: failed to take a complete medical history and perform a physical examination of decedent, when he knew or should have known decedent had a history of diabetes. There is evidence that decedent self-reported his diabetic condition as reflected in the Macon County Jail intake reports; Dr. Braco further breached the appropriate standard of care by allowing decedent's oral diabetic management medication to be confiscated upon entry into the jail system without arranging for a suitable replacement of his diabetic medication. Glycemic control is fundamental to the management of diabetes, and decedent's self-management of his condition should have proceeded uninterrupted. Within 2-4 hour of intake screening, Dr. Braco should have consulted with him regarding the type and duration of diabetes, confirmed current medication, presence of complications, family history, and behavioral issues. There is no evidence that this was ever done. The records indicate that the decedent entered the jail on July 13, 2015, but wasn't evaluated by Dr. Braco until July 17, 2015. Dr. Braco further breached the standard of care by failing to have a management plan to achieve normal or near-normal glycema for diabetes management at the time of decedent's initial medical evaluation, and as decedent's condition worsened. Dr. Braco further breached the standard of care by failing to train correctional staff or require correctional staff be trained in the recognition of hypo- and hyperglycemia to minimize risk of future decompensation. If decedent's medication would have never been confiscated and/or replaced, decedent likely would have been able to adequately manage his own diabetic condition.

Dr. Braco further breached the standard of care by failing to perform a glucose test on decedent, such as a finger stick exam to determine his glucose level. Given that decedent disclosed he was diabetic at intake, his glucose level should have been tested at

least twice per day. There is no evidence it was checked until decedent' fifth day in custody. Dr. Braco further breached the standard of care by failing to identify the clear warning signs of diabetic ketoacidosis, including high blood glucose levels, nausea, weakness or fatigue, shortness of breath, and confusion. Once it became apparent decedent had hyperglycemia, he should have been monitored every 4-6 hours. The obvious distressing symptoms exhibited by the decedent over his five days in custody should have been viewed by Dr. Braco as a potentially life-threatening condition, requiring immediate ambulatory transport to an emergency care facility to prevent further complications and death. Dr. Braco further breached the standard of care by failing to order an emergency transport of the decedent as his conditioned rapidly deteriorated over five days in jail custody. If Dr. Braco would have followed the appropriate standards of care and ordered decedent to be transported from the jail once decedent began to show signs of distress, decedent could have received appropriate care, including fluid replacement and decedent could have received insulin therapy which would have likely reversed the process causing diabetic ketoacidosis.

The confiscation of decedent's necessary diabetic medication; failure to timely diagnose his rapidly deteriorating diabetic condition; failure to properly treat his rapidly deteriorating diabetic condition; and failure to timely order his emergency transport to a hospital when Dr. Braco knew or should have known he was experiencing diabetic ketoacidosis requiring emergency care, a life-threatening condition; all constitute departures from the appropriate standard of care.

The aforementioned actions by Dr. Braco constitute medical negligence. Furthermore, the negligence on the part of Dr. Braco more likely than not caused Michael Carter Sr.'s death.

This is a meritorious cause of action.

x  _Henry George Fein, MD_

# CERTIFICATE OF MERIT

I, Henry George Fein, am a licensed practicing physician. I am Board Certified in Endocrinology/Diabetes/Metabolism. I have more than thirty-five years of experience in this field. I am qualified to address the standards of care rendered by medical professionals practicing in the area of endocrinology/diabetes.

I have reviewed various medical records generated while the decedent, Michael Carter, Sr., was in the custody of Macon County, and records from Decatur Memorial Hospital, St. Mary's Hospital, Macon County Postmortem Examination, Macon County Coroner's Inquest transcript, medical staff interviews, Macon County correctional officer interviews, Macon County Jail intake reports, and Plaintiff's Complaint. I am familiar with the issues involved in this case.

It is my opinion, based upon a reasonable degree of medical certainty, and upon my review of the aforementioned records, that Nurse Jo Bates failed to utilize the knowledge and exercise the skill of a reasonably qualified registered nurse, and that she departed from the appropriate standard of care, and was negligent during the course of care and treatment rendered to decedent.

Specifically, Nurse Bates was negligent insofar as she: failed to take a complete medical history and perform a physical examination of decedent, when she knew or should have known decedent had a history of diabetes. There is evidence that decedent self-reported his diabetic condition as reflected in the Macon County Jail intake reports; Nurse Bates further breached the appropriate standard of care by allowing decedent's oral diabetic management medication to be confiscated upon entry into the jail system without arranging for a suitable replacement of his diabetic medication. Glycemic control is fundamental to the management of diabetes, and decedent's self-management of his condition should have proceeded uninterrupted. Within 2-4 hour of intake screening, Nurse Bates should have consulted with him regarding the type and duration of diabetes, confirmed current medication, presence of complications, family history, and behavioral issues. There is no evidence that this was ever done. The records indicate that the decedent entered the jail on July 13, 2015, but wasn't evaluated by Nurse Bates until July 17, 2015. Nurse Bates further breached the standard of care by failing to have a management plan to achieve normal or near-normal glycema for diabetes management at the time of decedent's initial medical evaluation, and as decedent's condition worsened. Nurse Bates further breached the standard of care by failing to train correctional staff or require correctional staff be trained in the recognition of hypo- and hyperglycemia to minimize risk of future decompensation. If decedent's medication would have never been confiscated and/or replaced, decedent likely would have been able to adequately manage his own diabetic condition.

Nurse Bates further breached the standard of care by failing to perform a glucose test on decedent, such as a finger stick exam to determine his glucose level. Given that decedent disclosed he was diabetic at intake, his glucose level should have been tested at

least twice per day. There is no evidence it was checked until decedent' fifth day in custody. Nurse Bates further breached the standard of care by failing to identify the clear warning signs of diabetic ketoacidosis, including high blood glucose levels, nausea, weakness or fatigue, shortness of breath, and confusion. Once it became apparent decedent had hyperglycemia, he should have been monitored every 4-6 hours. The obvious distressing symptoms exhibited by the decedent over his five days in custody should have been viewed by Nurse Bates as a potentially life-threatening condition, requiring immediate ambulatory transport to an emergency care facility to prevent further complications and death. Nurse Bates further breached the standard of care by failing to order an emergency transport of the decedent as his conditioned rapidly deteriorated over five days in jail custody. If Nurse Bates would have followed the appropriate standards of care and ordered decedent to be transported from the jail once decedent began to show signs of distress, decedent could have received appropriate care, including fluid replacement and decedent could have received insulin therapy which would have likely reversed the process causing diabetic ketoacidosis.

The confiscation of decedent's necessary diabetic medication; failure to timely diagnose his rapidly deteriorating diabetic condition; failure to properly treat his rapidly deteriorating diabetic condition; and failure to timely order his emergency transport to a hospital when Nurse Bates knew or should have known he was experiencing diabetic ketoacidosis requiring emergency care, a life-threatening condition; all constitute departures from the appropriate standard of care.

The aforementioned actions by Nurse Bates constitute medical negligence. Furthermore, the negligence on the part of Nurse Bates more likely than not caused Michael Carter Sr.'s death.

This is a meritorious cause of action.


x  _Henry George Fein, MD_

2