E-FILED
Friday, 24 May, 2019 01:13:31 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

FELITA McGEE, as Independent Administrator of the Estate of MICHAEL CARTER, SR., deceased and as next-of-kin,

Plaintiff,

vs.

Case No. 16-cv-2221

MACON COUNTY SHERIFF'S DEPARTMENT; DECATUR MEMORIAL HOSPITAL; DMH CORPORATE HEALTH SERVICES; ROBERT BRACO, MD; JO BATES, LPN; RANDELL WEST; LARRY PARSANO; TERRY COLLINS; MICHAEL PATTON; JOSHUA PAGE; and COUNTY OF MACON, ILLINOIS,

Defendants.

# JO BATES, LPN'S MEMORANDUM OF LAW IN SUPPORT OF FIRST MOTION *IN LIMINE*

NOW COMES Defendant, JO BATES, LPN, by her attorneys, QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO, and for her Memorandum of Law in Support of First Motion *in Limine*, states:

## STATEMENT OF RELEVANT FACTS

On July 18, 2015, Plaintiff's deceased died while in custody. Plaintiff filed her Complaint alleging that Plaintiff's deceased died as a result of medical negligence and a denial of his constitutional rights by defendant. The constitutional rights claims are

brought under 42 U.S.C. §1983. The medical negligence claims are brought under Illinois law.

Michael Carter was in the custody of Macon County Jail in relation to a pending criminal case in the Central District, 15-MJ-7044. Carter was charged with one count of Attempted Distribution of Cocaine and one count of Discharge of a Firearm During and in Relation to a Drug Trafficking Crime. The rate of criminal conviction for drug crimes in the Central District approaches 100%, and the evidence against Plaintiff's deceased, as laid out in Det. Ramey's affidavit and the information provided by his co-conspirator Josue Pena, was quite strong.

Carter's criminal history includes a 1997 conviction for the Class 4 Felony of Carrying or Possessing a Firearm in Public, a 1997 conviction for the Class A Misdemeanor of Theft, a 2001 conviction for the Class 1 Felony of Manufacturing or Delivering Cocaine, a 2004 conviction for the Class C misdemeanor of Possession of Cannabis, and a 2010 conviction for the Class 3 Felony of Aggravated Battery of a Child with Bodily Harm. He was incarcerated in the Illinois Department of Corrections for several years.

## ARGUMENT

The IPI jury instructions for wrongful death allow recovery for "pecuniary loss," which "may include loss of money, benefits, goods, services, and society." IPI 31.01. The Instructions (IPI 31.01) direct the jury:

In determining pecuniary loss, you may consider what the evidence shows concerning the following:

1. What money, benefits, goods, and services the decedent customarily contributed in the past;
2. What money, benefits, goods, and services the decedent was likely to have contributed in the future;
3. His age;
4. His sex;
5. His health;
6. His physical and mental characteristics;
7. His habits of industry, sobriety, and thrift;
8. His occupational abilities;
9. The grief, sorrow, and mental suffering of next of kin;
10. The relationship between lineal next of kin and the decedent.

The instructions define “loss of society” as “the mutual benefits that each family member receives from the other's continued existence, including love, affection, care, attention, companionship, comfort, guidance, and protection.” IPI 31.11. It seems obvious that Carter’s ability to provide such benefits to his son would be limited while he is in prison.

Character evidence is admissible in a civil trial when it is not being used to show that a person acted on a particular occasion in accordance with the character trait. Fed. R. Evid. 404(a). Character evidence can be proven at trial by reputation or opinion testimony, or, when the character trait is an essential element of a claim, it may be proven by specific instances of conduct. Fed. R. Evid. 405. Evidence concerning a decedent’s character, contributions, and services to his family is appropriate in a wrongful death suit to determine damages. See *Huston v. Chicago Transit Authority*, 342

N.E.2d 190, 195 (Ill. App. Ct. 1st Dist. 1976); See also *Drews v. Gobel Freight Lines*, Inc., 557 N.E.2d 303, 308-09 (Ill. App. Ct. 1st Dist. 1990).

*Huston* is a case in which a woman was run over by a bus and killed while she was crossing a street with the right-of-way. At trial, the court allowed evidence of the plaintiff's character, contributions, and service to her family. Specifically, the jury heard evidence that she worked and earned $160 bi-weekly which she spent for the household, that she was a homemaker for her husband and 14 year old son, and that she had raised two other children that were emancipated. *Huston*, 342 N.E.2d at 195. A jury found for the plaintiff. *Id.* at 192. On appeal, defendants challenged the trial court's allowance of the character evidence, among other things. The Appellate court ruled that "proof of such matters is appropriate to the question of damages." *Id.* at 195. The judgment was ultimately upheld.

*Drews* is a similar case in which a 32 year old man was driving a camper van when he was struck by a semi and killed. During trial, extensive evidence of the decedent's character was admitted via his family, friends, neighbors, and co-workers. *Drews*, 557 N.E. 2d at 305. The jury heard evidence that he was "an outstanding young man" with a very close relationship with his wife. *Id.* They heard about how he was actively involved in parenting his young sons. *Id.* The jury heard about how he engaged in community volunteer activities, and heard phrases such as "All-American Guy," "great neighbor and friend," "most memorable person," and "devoted husband and father."

*Id.* Additionally, the trial court allowed photos and videos of the decedent engaging in family activities with his wife and young sons. *Id.* The jury was also allowed to hear evidence about how the decedent was an excellent insurance salesman, with great prospects in that industry. *Id.* The jury awarded approximately $8.3 million to the plaintiff. On appeal, defendants argued that the award was excessive, based in part on what they deemed to be the prejudicial evidence regarding decedent's relationship with his family, status in the community, and professional life. The Appellate court found no prejudice and upheld the judgment, and held that "pecuniary injury includes not just loss of financial support, but also all of those intangible benefits encompassed by the terms loss of society or loss of consortium. Furthermore, a jury may take into account the fact that decedent was enterprising and industrious and had good prospects for advancement." *Id.* at 308 (*internal quotations omitted*). Accordingly, the evidence was properly admitted to determine damages.

Similar to the *Huston* and *Drews* cases, defendant here seeks to introduce evidence of the decedent's character for the purposes of helping the jury to determine adequate damages, should they find liability and be required to proceed to that next step. Although in the present case the evidence to be introduced is opposite of that in *Huston* and *Drews* in that it is negative character traits being offered by the opposition, it is no less relevant. Additionally, it is almost certain that defendant's evidence will be offered to rebut evidence of the decedent's good character that will be offered by the plaintiff.

Additionally, lost future earnings can be recoverable as damages in a suit alleging wrongful death. 740 ILCS 180/2; *See American Nat. Bank & Trust Co. of Chicago v. Thompson*, 511 N.E.2d 1206 (Ill. App. Ct. 1987). Plaintiff contends that Carter recently obtained a certificate as an HVAC technician and had a pending job offer. Evidence is relevant if it has any tendency to make a fact more or less probable and that fact is of consequence in the case. Fed. R. Evid. 401. Evidence, if not otherwise prohibited, is admissible if it is relevant, and its probative value is not substantially outweighed by its prejudicial effect. Fed. R. Evid. 402; Fed. R. Evid. 403.

Courts have generally held that criminal history and activity has an impact on a future earnings calculation, and can, therefore, be admissible for that purpose. *See Clark v. W & M Kraft, Inc.* 476 Fed. Appx. 612 (6th Cir. 2012) (Clark's criminal history and failure to pay child support were relevant to the jury's future-earnings calculation); *Walker ex. rel. his Court Appointed Curator v. United Healthcare of Hardin, Inc.* 2010 WL 3092648 (W.D. Ky. 2010) (…the Court finds that Plaintiff's post-claim convictions are relevant to his post-injury employability and his future earning calculation); *Martin v. JLG Industries, Inc.,* 2007 WL 3202739 (M.D. Fla. 2007) (…the Court finds that this conviction is relevant to his lost earnings calculation, and that its probative value outweighs its prejudicial effect).

Courts have disfavored allowing evidence of criminal activity based solely upon an arrest. The Supreme Court, in *Schware v. Board of Bar Exam. of State of N.M*, stated that

"The mere fact that a man has been arrested has very little, if any, probative value…" 353 U.S. 232, 241 (1957). The *Schware* Court went on to state that "*When formal charges are not filed against the arrested person and he is released without trial*, whatever probative force the arrest may have had is normally dissipated." *Id.* (emphasis added). That is not the case here. Carter passed away in custody on charges that were likely to land him in prison for a significant sentence.

Even evidence which has its probative value outweighed by its prejudicial effect can become admissible when an opponent opens the door. *See U.S. v. Senffner*, 280 F.3d 755 (7th Cir. 2002); *See also U.S. v. Pierson*, 544 F.3d 933 (8th Cir. 2008). "[A] party cannot be permitted on the one hand to introduce evidence that appears favorable to his argument and then complain, after the circumstances are fully developed, because the evidence becomes detrimental to his cause." *U.S. v. Touloumis*, 771 F.2d 235, 241 (7th Cir. 1985).

Defendant is clearly permitted to admit evidence of Plaintiff's deceased's prior criminal convictions. Should Defendant be found liable, loss of future earnings could be a recoverable measure of damages. The criminal record of Plaintiff's deceased is relevant because it would have had a direct impact on his future earning capacity. It also goes to the loss of society and is probative of his occupational prospects and his habits of industry, sobriety, and thrift.

*Clark v. W & M Kraft, Inc* was a case the revolved around a plaintiff falling from a tower, and one of the damages that plaintiff sought to recover was his loss of future earnings. 476 Fed. Appx. 612 (6th Cir. 2012). In *Clark*, the 6th Circuit found no error when the District Court allowed evidence regarding a plaintiff's criminal history and failure to pay child support. *Id.* at 617. The 6th Circuit held that this evidence was relevant to the jury's future-earnings calculation. *Id.* The Court further found that plaintiff had opened the door to that testimony by presenting a "robust future earning capacity," and by claiming that the recent birth of a child would lead to more stability in his life and future earnings. *Id.*

Just like in *Clark*, Carter's criminal record would materially affect his ability to earn in the future. Furthermore, just like the plaintiff in *Clark*, it appears that the plaintiff in the present matter seeks to introduce evidence of a more robust future earning capacity, due to the Plaintiff's deceased recent completion of a trade program, as well as evidence that the Plaintiff's deceased would have had more stability in his life do to the recent birth of a child. Not only is this evidence admissible in its own capacity, but it will certainly become admissible the moment Plaintiff opens the door regarding the rainbows and sunshine version of Plaintiff's deceased's future.

Defendant must also be permitted to admit evidence regarding the criminal charges that were pending against Plaintiff's deceased at the time of his death, as well as the likelihood of conviction and the sentencing range to which he would have been exposed

upon conviction. The charges were very likely to result in a conviction, and a conviction would result in a significant period of incarceration. This evidence is highly relevant to a determination of Plaintiff's deceased's future earning capacity, wage loss, loss of society, and other factors listed in the jury instructions. Additionally, it appears that plaintiff intends to open the door to this evidence by presenting evidence on the issue that is favorable to plaintiff.

While the Supreme Court has held that "The mere fact that a man has been arrested has very little, if any, probative value…" *Schware v. Board of Bar Exam. of State of N.M* 353 U.S. 232, 241 (1957), the Court went on to state: "*When formal charges are not filed against the arrested person and he is released without trial*, whatever probative force the arrest may have had is normally dissipated." *Id.* (emphasis added). Carter was facing formal charges and was never released from custody. *Schware* revolved around the plaintiff being denied access to the bar, in part due to his prior arrests. *Id.* The arrests were many years old, and in relation to what the Court found to be vague and overly broad laws. *Id.* at 242.

Carter was charged and being held pending trial when he died. At the very least, this goes beyond the "mere fact that a man has been arrested," and avoids the dissipation of probative force that the Court alluded to in *Schware.* The evidence is not being admitted merely to undermine Carter's credibility, as convictions usually are. Defendant does not seek to simply admit evidence of an arrest. Defendant seeks to

submit more substantial evidence, through fact and expert testimony, about the very strong probability that Plaintiff's deceased would have been convicted in his criminal case. Unlike a simple arrest record, this evidence will be subject to cross examination.

This issue was considered by the Louisiana District Court in *Granger v. Marine,* 2016 WL 4621501 (E.D. La. 2016). *Granger* is a trip and fall case in which Plaintiff was a welder employed to make repairs on Defendant's barge, and sustained injuries after he tripped and fell during those repairs. Defendants sought to introduce evidence that Plaintiff had been recently arrested for Sexual Battery of a Child to establish a reduced capacity for future earnings via cross examination of Plaintiff's economic expert. The District Court conceded that the evidence would be relevant for that purpose, but nonetheless excluded it. *Id.* at 6. The Court applied the probative value vs. prejudicial effect balancing test from Fed. R. Evid. 403 and found that although it may be relevant for the purpose of calculating damages, the prejudicial effect was too high. The Court paid particular attention to the nature of the arrest and the fact that the Plaintiff had not been formally charged. *Id.* Unlike Granger, Michael Carter was formally charged and in custody.

Additionally, Defendant is not seeking to admit the mere fact of the arrest, but an expert analysis of the likelihood of conviction and federal sentencing range. This evidence will have a very strong and easily established connection to the potential pecuniary loss suffered by the Plaintiff, and Plaintiff's deceased's availability to provide

familial services and guidance to his son. The probative value of the evidence Defendant is seeking to admit here is much higher than that of the "mere fact" of arrest in *Granger*.

Additionally, although charges of drug trafficking and gun violence are no light thing, those charges are certainly less prejudicial and less likely to inflame the passions of the jury than charges of Sexual Battery of a Child, such as those in *Granger*. The jury will already know that Carter was in jail, and will not be significantly more prejudiced should they be informed of the nature of the charges and likely outcome of the case. Not only is the evidence in this case far more probative than what was proposed to be admitted in *Granger*, but it is also significantly less prejudicial, and should be admitted.

Finally, "a party cannot be permitted on the one hand to introduce evidence that appears favorable to his argument and then complain, after the circumstances are fully developed, because the evidence becomes detrimental to his cause." *U.S. v. Touloumis*, 771 F.2d 235, 241 (7th Cir. 1985). In other words, it is patently unfair to allow a party to present one side of a story, while simultaneously prohibiting evidence of the other side. That subverts the very purpose of the adversarial judicial system. When a party opens the door to prejudicial evidence by bringing up one side of an issue, an opposing party is entitled to now use that previously excluded prejudicial evidence to put everything into context or to rebut the one-sided claims. *See Pierson, 544 F.3d* at 940.

In *Pierson*, the criminal defendant was charged with attempted production of child pornography and attempting to induce a child to engage in criminal sexual activities. Prior to trial, the defendant secured a ruling via motion *in limine* to exclude evidence that he had been previously convicted of indecent contact with a child, on the grounds that it would be overly prejudicial. During trial, the defendant denied that he would ever act on his desire to touch a young girl. The District Court for the Southern District of Iowa ruled that defendant had opened the door, and allowed the prosecution to present evidence of his prior conviction. The 8th Circuit upheld that ruling, finding that the defendant's self-serving statements opened the door to the otherwise overly prejudicial evidence, and could be challenged.

In the present case, it appears through discovery that the Plaintiff intends to admit evidence that Plaintiff's deceased would have a robust future earning capacity due to his recent completion of a trade program. It also appears that Plaintiff will seek to admit evidence establishing that Plaintiff's deceased would have had a strong supporting role in the raising of his young child. This evidence is self-serving and would be directly contradicted by the factual and expert testimony that Defendant seeks to admit. Even if the Court determines that the evidence regarding Plaintiff's deceased's pending criminal case has a prejudicial effect that outweighs its probative value, in the spirit of fundamental fairness, the Court must allow that evidence if Plaintiff opens the door by painting a false picture of Plaintiff's deceased's future earning potential.

## CONCLUSION

Defendant should be permitted to admit evidence regarding Plaintiff's deceased's criminal background and pending criminal charges. This evidence would be provided via certified copies of convictions, factual testimony, and expert testimony. This evidence would be directly relevant to any calculation of plaintiff's damages for pecuniary loss, including past and future earning capacity of Plaintiff's deceased, past and future services provided by Plaintiff's deceased, and Plaintiff's deceased's ability to care for and raise his young son. The evidence's probative value is significantly stronger than its prejudicial effect. Alternatively, the court should enter an order permitting this evidence in the event that plaintiff opens the door by attempting to present evidence regarding the sunshine and rainbows version of Plaintiff's deceased that ignores his criminal background and the very strong likelihood that he was facing a long and imminent prison sentence.

WHEREFORE, Defendant, JO BATES, LPN, prays that this Honorable Court enter an Order permitting the presentation of evidence regarding the criminal record and history of incarceration of Plaintiff's deceased, as well as the likelihood of conviction of Plaintiff's deceased in Case No. 15-MJ-7044 and the sentencing range to which Plaintiff's deceased would have been exposed, and related evidence pertaining to his criminal history and pending charges.

JO BATES, LPN, Defendant

By: *s/Matthew A. Warner*
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO

Peter R. Jennetten (Illinois Bar No. 6237377)
pjennetten@quinnjohnston.com
Matthew A. Warner (Illinois Bar No. 6321689)
mwarner@quinnjohnston.com
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO
227 N.E. Jefferson Ave.
Peoria, IL 61602-1211
(309) 674-1133 (phone)
(309) 674-6503 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on **May 24, 2019**, I electronically filed **JO BATES, LPN'S MEMORANDUM OF LAW IN SUPPORT OF FIRST MOTION *IN LIMINE*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Rahsaan A. Gordon<br>rg@attorneygordon.com<br>Law Offices of Rahsaan A. Gordon | **Attorneys for Plaintiff** |
| William W. Kurnik<br>bkurnik@khkklaw.com<br>Susan J. Eberhardt<br>seberhardt@khkklaw.com<br>Knight, Hoppe, Kurnik & Knight, Ltd. | **Attorneys for County Defendants** |
| Michael B. Baggett<br>mbaggett@sa-macon-il.us<br>Macon County State's Attorney's Office | **Attorney for Macon County** |
| Michael J. Kehart<br>mjk@kehart.com<br>Regan Lewis<br>rlewis@kehart.com<br>Kehart, Wise, Toth & Lewis | **Attorneys for Decatur Memorial Hospital, DMH Corporate Health Services and Robert Braco, MD** |
| Keith E. Fruehling<br>kfruehling@heylroyster.com<br>Brian M. Smith<br>bsmith@heylroyster.com<br>Jay E. Znaniecki<br>jznaniecki@heylroyster.com<br>Heyl, Royster, Voelker & Allen | **Attorneys for Randell West** |

*s/Matthew A. Warner*

Matthew A. Warner (Illinois Bar No. 6321689)
mwarner@quinnjohnston.com
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO
227 N.E. Jefferson Ave.
Peoria, IL 61602-1211
(309) 674-1133 (phone)
(309) 674-6503 (fax)

4847-3800-8457, v. 1